# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| MANCHESTER TEXAS FINANCIAL GROUP, LLC; MANCHESTER AUSTIN, LLC, AS ASSIGNEE OF MANCESTER TEXAS FINANCIAL GROUP, LLC; AND MANCHESTER FINANCIAL GROUP, LLC, | § § § § § | |
| *Plaintiffs* | § | A-19-CV-00009-LY |
| | § | |
| v. | § | |
| | § | |
| JAY BADAME AND TISHMAN CONSTRUCTION CORPORATION, | § § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

### TO: THE HONORABLE LEE YEAKEL
### UNITED STATES DISTRICT JUDGE

Before this Court are Defendant Tishman Construction Corporation's Motion to Dismiss filed on May 2, 2019 (Dkt. No. 45); Defendant Jay Badame's Motion to Dismiss filed on May 2, 2019 (Dkt. No. 46); Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery filed on June 17, 2019 (Dkt. No. 51); Plaintiff's Motion for Leave to File Surreply filed on August 1, 2019 (Dkt. No. 62);[1] and all related filings. On July 18, 2019, the District Court referred the above motions and related filings to the undersigned Magistrate Judge for resolution and for report and recommendation pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure

---

[1] Plaintiffs seek leave to file a Surreply to Defendants' Motions to Dismiss. Neither the local rules of this Court nor the Federal Rules of Civil Procedure allow a party to file a surreply as a matter of right. Indeed, surreplies are "highly disfavored" and permitted only in "extraordinary circumstances," such as when necessary to respond to new issues, theories, or arguments raised for the first time in a reply brief. *Luna v. Valdez*, 2017 WL 4222695, at *6 (N.D. Tex. Sept. 21, 2017). Plaintiffs have already had ample opportunity to make their arguments to the Court via their 48-page Amended Complaint, 22-page Response, and 12-page Motion for Leave to Conduct Discovery. Accordingly, the Court **DENIES** Plaintiffs Motion for Leave to File Surreply (Dkt No. 62).

72 and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules").

## I. Background

Manchester Financial Group, LP ("MFG") is a California-based commercial real estate development firm that specializes in hotel development. Dkt. No. 39 at ¶ 10. On May 19, 2014, MFG's corporate affiliate Manchester Texas Financial Group, LLC ("MTFG") entered into a construction contract[2] ("Contract") with Hunt Construction Group, Inc. ("Hunt") to build the Fairmont Austin Hotel, in Austin, Texas (the "Project"). *Id.* at ¶ 11. The Contract provided that Hunt would be the general contractor and construction manager of the Project in exchange for "Cost of the Work Plus a Fee with a Guaranteed Maximum Price." *Id.* The Contract further designated Eric Schreiner as Hunt's corporate representative, and he was assigned as the Project Manager. Dkt. No. 45-1 at p. 1. The Contract also contained an Arbitration Clause requiring all parties to arbitrate any claims or disputes arising out of or related to the Contract. *Id.* at §§ 15.3.1, 15.4.1.

On February 27, 2015, the Contract was amended to establish the "Guaranteed Maximum Price and the dates for Substantial Completion and Final Completion of the Hotel." Dkt. No. 39 at ¶11. The guaranteed maximum price for the Project's construction was agreed to be $ 237,734,526, the Substantial Completion date was agreed to be May 25, 2017, and the Final Completion date was agreed to be June 3, 2017. *Id.* Plaintiffs further contend that the timely completion of the Project was agreed to "be of the essence" of the parties' agreement. *Id.*

---

[2] See Dkt. No. 45-1 ("Standard Form of Agreement between Owner and Construction Manager is Constructor").

In October 2014, MTFG's rights and obligations under Contract were assigned to corporate affiliate Manchester Austin Hotel, LLC ("MAH"). MTFG, however, contends that it continued to act on behalf of MAH and MFG with respect to the Project. Dkt. No. 39 at ¶ 12.[3]

Shortly after the parties executed the Contract, Hunt was acquired by AECOM, Inc., a large multinational infrastructure firm. Plaintiffs allege that AECOM became involved in the construction industry in 2010, when it acquired another construction firm, Tishman Construction Corporation ("Tishman"). Thus, with AECOM's acquisition of Hunt, Hunt and Tishman became corporate affiliates. Plaintiffs allege that after AECOM acquired Hunt, it did not give the Project "the same care and attention that Hunt . . . had in the past." *Id.* at ¶ 27. In the Fall of 2016, AECOM transferred Project Manager Schreiner to a different construction project in California. Plaintiffs contend that AECOM failed to appoint a new Project Manager to oversee the Project. *Id.* at ¶ 30.

After heavy rainfall in the Spring of 2015, Plaintiffs agreed to move the Substantial Completion Date of May 25, 2017 to August 9, 2017. *Id.* at ¶ 28. After Plaintiffs became aware of more construction delays, MFG President Richard Gibbons sent Hunt a "Notice of Claims" expressing his concern that the Project was significantly behind schedule. *Id.* at ¶ 35. In response, Hunt scheduled a meeting with Plaintiffs to discuss the Project. On March 31, 2107, Tishman's Chief Operating Officer and President, Jay Badame, and Hunt's Chief Operating Officer and President, Michael Frattiani, met with Plaintiffs in Austin. *Id.* at ¶ 37. Plaintiffs allege that Badame acknowledged at the meeting that the August 9, 2017 Substantial Completion Date could not be met, but assured Plaintiffs that Hunt would deliver the Project in a timely and efficient manner and that he would provide a new project schedule by April 15, 2017. *Id.* at ¶ 40.

---

[3] The Court refers to MFG, MTFG and MAH collectively as "Plaintiffs."

On April 15, 2017, Hunt's Executive Vice President Bill Morthland informed Plaintiffs that the new Substantial Completion Date would be September 20, 2017. *Id.* at ¶ 43. On April 19, 2017, Hunt representatives Jose Pienknagura and Michael Frattiani met with Plaintiffs again and allegedly gave Plaintiffs the ultimatum to either (1) pay $3.6 million and have the Project completed by September 20, 2017; (2) pay $2,063,000 and have the Project completed by October 15, 2017; or (3) make no payments to cover acceleration costs and the Project would not be done until the end of 2017. *Id.* at ¶ 46. Plaintiffs agreed to pay the $3.6 million to Hunt so that the Project would be completed by September 20, 2017. *Id.* at ¶ 51. Although Plaintiffs made the first two installment payments, totaling approximately $2.7 million, they did not make the third installment to Hunt. *Id.* at ¶ 55.

Plaintiffs allege that Hunt did not meet the Substantial Completion Date of September 20, 2017. *Id.* at ¶ 56. On March 7, 2018, Plaintiffs decided to open the Hotel although the Project was not completed. *Id.* at ¶ 59. Plaintiffs allege that "40% of the rooms and many of its amenities were unavailable." *Id.* Plaintiffs allege that a Certificate of Substantial Completion has not yet been issued, and that the Hotel is operating pursuant to a Temporary Certificate of Occupancy. *Id.*

Plaintiffs further allege that: "DEFENDANTS strung PLAINTIFFS along month after month by lying about many things, concealing others, and always dangling the prospect of completion of the Hotel at a point in the future just close enough for Manchester to reasonably believe they could hit their target if they made the effort they promised, and not so far away that it would make sense for MANCHESTER to replace Hunt." *Id.* at ¶ 60. Plaintiffs allege that Hunt and Tishman, through Badame, made numerous false representations that the Project would be complete by September 20, 2017. *Id.* at ¶¶ 57-59.

4

Pursuant to the Arbitration Clause contained in the Contract, Plaintiffs have initiated arbitration proceedings against Hunt in this case and are seeking $100 million from Hunt. *See* Dkt. No. 45 p. 3. In addition to the arbitration proceeding, Plaintiffs filed the instant lawsuit in state court against AECOM, Inc., AECOM Tishman f/k/a Tishman Construction ("Tishman"), and Jay Badame, alleging fraud (intentional misrepresentation, non-disclosure, and no intent to perform) and negligent misrepresentation. *See Manchester Texas Financial Group LLC v. AECOM, Inc.*, D-1-GN-18-007014 (419th Dist. Ct. Travis County, Tex. Nov. 21, 2018).

On January 3, 2019, AECOM, Tishman and Badame removed this case to federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. Dkt. No. 1. On April 11, 2019, the District Court granted Plaintiffs' Voluntary Notice of Dismissal of Defendant AECOM. Dkt. No. 37. On April 11, 2019, Plaintiffs filed their First Amended Complaint against Tishman and Badame, once again alleging fraud and negligent misrepresentation. Plaintiffs seek over $50 million in damages.

Tishman and Badame have now filed Motions to Dismiss arguing that Plaintiff's lawsuit should be dismissed under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(6), and 12(b)(7). The Court will address the merits of both Motions below.

## II. Legal Standards

### A. Rule 12(b)(1)

The Fifth Circuit has held that a district court lacks subject matter jurisdiction over a case and should dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(1) when the parties' dispute is subject to binding arbitration. *Gilbert v. Donahoe*, 751 F.3d 303, 306–07 (5th Cir. 2014). The burden of proof for a 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Id.* at 307. In order to bear that burden, the party "must prove by a preponderance of the evidence that the

court has jurisdiction based on the complaint and evidence." *Id.* However, "a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.*

## B. Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). "If . . . the court rules on personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of establishing only a *prima facie* case of personal jurisdiction." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). "The district court is not obligated to consult only the assertions in the plaintiff's complaint in determining whether a prima facie case for jurisdiction has been made. Rather, the district court may consider the contents of the record at the time of the motion . . . ." *Id.* (internal quotations and citations omitted). "Although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a prima facie case for [personal] jurisdiction has been presented." *Id.* The plaintiff must prove that the court has jurisdiction over the defendant with regard to each claim. *Seiferth v. Helicopteros Atuneros, Inc.,* 472 F.3d 266, 275 (5th Cir. 2006).

## C. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted) (2008). While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations

in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court has explained that a court need not accept as true conclusory allegations or allegations stating a legal conclusion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Id.*

### III. Defendant Tishman's Motion to Dismiss

Tishman argues that Plaintiffs' lawsuit should be dismissed because (1) the Contract's arbitration clause deprives the Court of subject matter jurisdiction, and (2) the economic loss rule prohibits Plaintiffs from repackaging their contract claims against Hunt as tort claims against Tishman. Alternatively, Tishman argues that Plaintiffs have failed to plead fraud and negligent misrepresentation with particularity, Hunt is an indispensable party that cannot be joined, and therefore dismissal is warranted under Rule 12(b)(7). The Court addresses the arbitration issue first.

The Contract between MTFG and Hunt provides that "[c]laims, disputes, or other matters in controversy arising out of or related to the Contract . . . shall be subject to mediation as a condition precedent to binding dispute resolution." Dkt. No. 45-1 at § 15.3.1 It also contains the following arbitration clause:

> Any Claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement.

*Id.* at § 15.4.1 ("Arbitration Clause").

Although Tishman was not a signatory to the Contract, Tishman argues that the Arbitration Clause applies to Plaintiffs' claims in this lawsuit because those claims all arise of out of the underlying provisions of the Contract. Plaintiffs argue that there is not a valid agreement to arbitrate between Plaintiffs and Tishman because Tishman was not a signatory to the Contract. In other words, Plaintiffs argue that the only valid arbitration agreement is between Plaintiffs and signatory Hunt, not Tishman.

## A. The Law of Arbitration

"Under the Federal Arbitration Act, parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). "The FAA was designed to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (internal quotations and citations omitted). However, the Supreme Court has recognized that

> the FAA does not require parties to arbitrate when they have not agreed to do so, nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement. It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.

*Id.* (citations omitted).

The FAA establishes "a liberal federal policy favoring arbitration agreements" and "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97 (2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the

arbitrator." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). "Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019).

In this case, Texas law governing "the validity, revocability, and enforceability of contracts generally" controls the dispute. *Id.* (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). "Under Texas law, a party can compel arbitration only by establishing: (1) the existence of a valid agreement to arbitrate; and (2) that the claims asserted by the party attempting to compel arbitration are within the scope of the arbitration agreement. Both the existence issue and scope issue are decided by the court." *Id.* (internal citations omitted). If the court finds that a valid agreement to arbitrate exists and that the claims asserted fall within that agreement, it is required to compel arbitration. *Id.* at 531. "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses*, 460 U.S. at 24-25. A district court lacks subject matter jurisdiction over a case and should dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(1) when the parties' dispute is subject to binding arbitration. *Gilbert*, 751 F.3d at 306.

**B. Does the Arbitration Clause apply to Tishman?**

As noted, Plaintiffs argue that the Arbitration Clause does not apply in this case because Tishman was not a signatory to the Contract. Plaintiffs contend that the Arbitration Clause applies only to the signatories to the Contract, in this case Plaintiffs and Hunt. Plaintiffs are mistaken.

"When parties dispute whether a 'non-signatory can compel arbitration pursuant to an arbitration clause,' their dispute 'questions the existence of a valid arbitration clause between specific parties and is therefore a gateway matter for the court to decide.'" *Halliburton*, 921 F.3d at 530 (quoting *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011)). "Although arbitration agreements apply to non-signatories 'only in rare circumstances,' the question of '[w]ho is actually bound by an arbitration agreement is [ultimately] a function of the intent of the parties, as expressed in the terms of the agreement.'" *Id.* 530-31 (quoting *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 355, 358 (5th Cir. 2003)). Courts addressing whether a non-signatory can enforce an arbitration clause are guided by "traditional principles of state law," which allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiaries, waiver, and equitable estoppel. *Id.* at 531; *see also In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005) ("[U]nder certain circumstances, principles of contract law and agency may bind a non-signatory to an arbitration agreement.").

Although Tishman does not name the equitable estoppel doctrine in its Motion, it appears that it is relying on that theory to argue that Plaintiffs should be compelled to arbitration in this case. A party to an arbitration agreement may be equitably estopped from litigating its claims against non-parties in court and may be ordered to arbitration. *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 398 (5th Cir. 2006). Under the equitable estoppel theory, "a litigant who sues based on a contract subjects him or herself to the contract's terms . . . including the Arbitration Addendum." *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 527 (Tex. 2015) (internal citations and quotations omitted). Thus, "the claimant cannot 'have it both ways;' it cannot, 'on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the

agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory.'" *Id.* (quoting *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000)).

The Fifth Circuit has compelled a signatory to an arbitration agreement to arbitrate a case with a non-signatory under the following theories of equitable estoppel: (1) the "direct benefits estoppel" theory when the claim depends on the contract's existence and would be unable to stand independently without the contract; (2) the "intertwined claims estoppel" theory where a non-signatory defendant has a close relationship with one of the signatories and the claims are intertwined with the underlying contractual obligations; and (3) the "concerted misconduct estoppel" theory where the signatory raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories to the contract.[4] *E.g.*, *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 609-10 (5th Cir. 2016); *Hill v. G E Power Sys., Inc.*, 282 F.3d 343, 349 (5th Cir. 2002); *Grigson*, 210 F.3d at 527. It appears Tishman is relying on the intertwined claims theory of estoppel in this case.

Because the Texas Supreme Court had not directly addressed whether the intertwined claims theory of estoppel is available under Texas law, the Fifth Circuit in *Hays* made "an *Erie* guess" holding "that the Texas Supreme Court, if faced with the question, would adopt intertwined claims estoppel." 838 F.3d at 612.[5] As noted, the intertwined claims theory of estoppel involves compelling arbitration "when a nonsignatory defendant has a 'close relationship' with one of the

---

[4] The Texas Supreme Court expressly rejected the "concerted misconduct" theory of equitable estoppel. *See In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 192 (Tex. 2007) (refusing to apply concerted-misconduct estoppel theory to require plaintiffs to arbitrate with signatory's affiliates finding that the "the theory is far from well-settled in the federal courts.").

[5] *See Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 639 (Tex. 2018) (acknowledging that the Fifth Circuit "has predicted we would adopt this estoppel formulation" but "[w]e need not consider the viability of such a theory in this case, because even if we were to embrace it, the Agency has not shown its applicability.").

signatories and the claims are 'intimately founded in and intertwined with the underlying contract obligations.'" *Id.* at 610 (quoting *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 193-94 (Tex. 2007). "It applies when there is a 'tight relatedness of the parties, contracts, and controversies.'" *Hays*, 838 F.3d at 610 (quoting *JLM Industries, Inc. v. Stolt-Nielsen, SA*, 387 F.3d 163, 177 (2d Cir. 2004)). Courts have employed this estoppel exception to dismiss "strategic pleading" that seeks to avoid arbitration against a nonsignatory. *Id.* at 610 (quoting *In re Merrill Lynch*, 235 S.W.3d at 194). As the Texas Supreme Court reasoned in *Merrill Lynch*, "allowing litigation to proceed that is in substance against a signatory though in form against a nonsignatory would allow indirectly what cannot be done directly." 235 S.W.3d at 193-94. The court further "observed that intertwined claims estoppel works to prevent signatories to an arbitration agreement from avoiding arbitration simply by suing 'nonsignatory principals or agents for pulling the strings.'" *Id.* at 194.

The Court finds that the intertwined claims estoppel doctrine applies in this case. Based on the pleadings, Tishman and Hunt clearly had a "close relationship" in this case, as corporate affiliates both owned by AECOM, and Plaintiffs' Amended Complaint alleges indistinguishable factual allegations against both parties. For example, the Amended Complaint alleges that:

> (1) Hunt and Tishman employees falsely told Plaintiffs they "had matters under control" and that they were "making up lost time;"[6]
>
> (2) Hunt and Tishman employees met with Plaintiffs on March 31, 2017 in Austin and assured Plaintiffs "that Hunt could and would deliver the Project in a timely and efficient manner;"[7]
>
> (3) Tishman COO Badame was also the COO of Hunt;[8]

---

[6] Dkt. No. 39 at ¶ 28.
[7] *Id.* at ¶¶ 37-40.
[8] *Id.* at ¶ 37.

(4) Hunt employee Bill Morthland, at the direction of Badame, e-mailed Plaintiffs a false and inaccurate Project Schedule;[9]

(5) Hunt demanded, at the direction of Tishman, a $3.6 million payment to finish the Project;[10]

(6) Tishman and Hunt employees made false representations "both orally and in the April 2017 presentation;"[11] and

(7) Tishman covered up the extent of Hunt's incompetence on the Project and kept Plaintiffs from replacing Hunt.[12]

Thus, Plaintiffs' Amended Complaint treats Hunt and Tishman as a single unit in this case and alleges that they were acting together to mispresent the status of the Project. *See Hays*, 838 F.3d at 612 (noting that plaintiff treated signatory and non-signatory as indistinguishable single unit); *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l Inc.*, 198 F.3d 88, 98 (2d Cir. 1999) (affirming arbitration order where the plaintiff treated nonsignatory companies and their signatory assignees as a "single unit in its complaint").

In addition, although Plaintiffs have alleged tort claims only against Tishman, those claims are intertwined with the terms and obligations under Plaintiffs' Contract with Hunt. *See Grigson*, 210 F.3d at 526 (finding that plaintiff could not avoid the arbitration clause "by casting their claims in tort, rather than in contract"). Every misrepresentation alleged in the Amended Complaint involves Hunt's obligations and performance under the Contract, and all of the damages in this case arise from Hunt's purported failure to complete the Project within the contractually required schedule and budget. As Tishman points out: "Ultimately, the crux of Plaintiffs' claims against Tishman and Mr. Badame consists of representations made by Hunt's President and Chief Operating Officer, Michael Frattiani, that Hunt could meet the

---

[9] *Id.* at ¶ 43.
[10] *Id.* at ¶¶ 44, 46.
[11] *Id.* at ¶ 52.
[12] *Id.* at ¶ 58.

September 20, 2017 completion date if Plaintiffs provided a $3.6 million acceleration payment." Dkt. No. 53 at p. 4. Thus, there is a "tight relatedness of the parties, contracts and controversies," sufficient to compel Plaintiffs to arbitrate their claims against Tishman. *See Mayton v. Tempoe, LLC*, 2017 WL 2484849, at *6 (W.D. Tex. June 7, 2017) (compelling signatory to arbitration where claims against nonsignatory were indistinguishable from claims against signatory and based on same contract); *Fin & Feather Chalets, LLC v. S. Energy Homes, Inc.*, 2014 WL 4354459, at *13 (E.D. La. Sept. 2, 2014) (finding that non-signatory may invoke equitable estoppel to compel arbitration where plaintiff did not distinguish between the alleged misconduct of any defendant). The Court finds that "[Plaintiffs'] current efforts to distinguish amongst defendants and claims are the archetype of strategic pleading intended to avoid the arbitral forum, precisely what intertwined claims estoppel is designed to prevent." *Hays*, 838 F.3d at 613.

Accordingly, the intertwined claims estoppel doctrine should be applied in this case. As the Fifth Circuit has reasoned, the result in this case "makes sense because the parties resisting arbitration had expressly agreed to arbitrate claims of the very type that they asserted against the nonsignatory." *Bridas*, 345 F.3d at 361. The Court finds that Plaintiffs should be compelled to arbitration to avoid inequitable results such as double recovery through parallel litigation. Therefore, the Court recommends granting Tishman's Motion to Dismiss.[13]

### IV. Badame's Motion to Dismiss

Badame argues that Plaintiffs' lawsuit must be dismissed under Rules 12(b)(2) and 12(b)(6) because (1) he is not subject to personal jurisdiction in Texas, and (2) the Amended Complaint

---

[13] Because the Court finds that the Plaintiffs should be compelled to arbitration, the Court need not address Tishman's alternative arguments.

fails to allege a claim for fraud or negligent misrepresentation against Badame. The Court addresses the issue of personal jurisdiction first.

## A. Personal Jurisdiction Principles

A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant if the state's long-arm statute permits an exercise of jurisdiction over that defendant and an exercise of jurisdiction would comport with the requirements of the Due Process Clause of the Fourteenth Amendment. *Sangha*, 882 F.3d at 101; *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Because the requirements of Texas's long-arm statute are coextensive with the requirements of the Due Process Clause, the sole inquiry is whether this court's exercise of personal jurisdiction over the Defendants would be consistent with due process. *Sangha*, 882 F.3d at 101. In order for personal jurisdiction to satisfy due process requirements, a plaintiff must show that (1) the defendant purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of "fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

A defendant's "minimum contacts" may give rise to either specific or general personal jurisdiction, depending on the nature of the suit and the defendant's relationship to the forum state. *Sangha*, 882 F.3d at 101. Specific jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (internal quotation marks omitted).

"A court may assert general jurisdiction over [non-resident defendants] to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to

render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Establishing general jurisdiction is "difficult" and requires "extensive contacts between a defendant and a forum." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction. *Id.* at 609 (quoting *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002)). "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." *Id.* at 610 (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007)).

## B. Does the Court have Personal Jurisdiction over Badame?

In this case, Plaintiffs only assert that the Court has specific jurisdiction over Badame. *See* Dkt. No. 51 at p. 5 n. 8 ("Plaintiffs do not assert general jurisdiction.").

The Fifth Circuit has articulated a three-step analysis for the specific jurisdiction inquiry:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there;
>
> (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and
>
> (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (internal citations omitted). If the plaintiff establishes the first two prongs, the burden then shifts to the defendant to make a "compelling case" that the assertion of jurisdiction is not fair or reasonable. *Id.*

For minimum contacts to exist, "a defendant must have purposefully availed himself of the benefits and protections of the forum state such that he should reasonably anticipate being haled

into court there." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)) (internal citations omitted). "That requirement is the 'constitutional touchstone' of personal jurisdiction. It 'ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.'" *Id.* at 193-94. The plaintiff cannot supply "the only link between the defendant and the forum. Rather, jurisdiction is proper only where the defendant *himself* made deliberate contact with the forum." *Id.* at 194 (quotations omitted).

### 1. The Meeting in Austin

Plaintiffs first argue that they have established sufficient minimal contacts between Badame and Texas to confer personal jurisdiction over Badame because he attended a meeting in Austin on March 31, 2017 (the "Meeting"), during which he allegedly made fraudulent and negligent misrepresentations. "As such, through this one meeting Plaintiffs have already alleged sufficient minimum contacts between Badame and Texas to confer personal jurisdiction over the Defendant." Dkt No. 51 at p. 7.

Generally, "the defendant's commission of a tort while physically present in the state will readily confer specific jurisdiction." *Carmona*, 924 F.3d at 194; *see also Guidry v. United States Tobacco Co.*, 188 F.3d 619, 628 (5th Cir.1999) ("When a nonresident defendant commits a tort within the state . . . that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor . . . ."). Thus, Plaintiffs are correct that the Court would have personal jurisdiction over Badame if he committed a tort while in Texas. The problem for Plaintiffs is that they have failed to allege plausible tort claims against Badame.

To recover on their negligent misrepresentation[14] and fraud[15] claims, Plaintiffs must show, in part, that Badame conveyed "false information" to Plaintiffs at the Meeting. *E.g.*, *Lane v. Halliburton*, 529 F.3d 548, 564 (5th Cir. 2008) (noting that to recover for fraud or intentional misrepresentation in Texas, the plaintiff must prove that "a material representation was made" and that "the representation was false") (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001)); *Moncrief*, 481 F.3d at 314 ("The elements for negligent misrepresentation include providing false information upon which a plaintiff relies.") (citing *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).

Plaintiffs allege that Badame made three misrepresentations in the Meeting: first, he "presented himself as in charge," and second, he "assured Plaintiffs that the Project was a priority for AECOM and that Badame and his team of experts would provide an executable [Project] schedule." Dkt. No. 51 at p. 7. Plaintiffs' own allegations in the Amended Complaint show that these statements were not false. The Amended Complaint states that "[i]t was clear that Badame was the person in charge" and that Badame was the COO of both Tishman and Hunt. Dkt. No. 39 at ¶ 37. In addition, Plaintiffs concede in their Amended Complaint that they

---

[14] "Under Texas law, the elements of negligent misrepresentation are: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 123 (5th Cir. 2019) (quoting *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).

[15] To recover for fraud or intentional misrepresentation in Texas, a plaintiff must prove: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation, and (6) the party thereby suffered injury." *Lane v. Halliburton*, 529 F.3d 548, 564 (5th Cir. 2008) (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001)). To prevail on a fraudulent concealment claim, a Plaintiff must prove the above elements and that "the particular circumstances impose a duty on the party to speak and he deliberately remains silent." *Id.* (quoting *In re Seigel*, 198 S.W.3d 21, 29 (Tex. App. 2006, pet. denied)).

received the Project Schedule on April 15, 2017 "as promised by Badame." *Id.* at ¶ 43. Thus, Badame's representations that he was "in charge," and that he would supply a new Project Schedule to Plaintiffs by April 15, 2017, were not false and, therefore, could not support a plausible claim for fraudulent or negligent misrepresentation under Texas law. *See Thompson v. Bank of Am., N.A.*, 13 F. Supp.3d 636, 660 (N.D. Tex. 2014) (dismissing fraud and negligent misrepresentation claim where plaintiffs failed to show that "what was said was untrue"), *aff'd*, 783 F.3d 1022 (5th Cir. 2015).

Plaintiffs allege that Badame's third misrepresentation was that "Badame and his team of experts would provide an executable schedule and bring their efforts and expertise to complete the Project in a timely and successful manner." Dkt. No. 51 at p. 7. This allegation cannot support a claim for negligent misrepresentation because it was not a misstatement of an existing fact. "A claim for negligent misrepresentation under Texas law contemplates that the 'false information' provided by the defendant is a misstatement of existing fact. Negligent misrepresentation does not occur when a defendant simply makes a guess as to a future, unknown event." *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 357 (5th Cir. 1996) (internal citations omitted); *see also Moncrief*, 481 F.3d at 314 ("We have . . . clarified that a negligent misrepresentation claim must allege a misstatement of an 'existing fact,' not the "*future* behavior of [defendant].""). The misrepresentation alleged by Plaintiffs concerned the future behavior of Defendants – that Defendants would provide an executable schedule and complete the Project in a timely and efficient manner. *See Moncrief*, 481 F.3d at 314 (holding that the alleged misrepresentation claim was not actionable because it concerned the *future* behavior of the defendant – that he would continue to honor the agreements – rather than an "existing fact"); *Sergeant Oil & Gas Co. v. National Maintenance & Repair, Inc.*, 861 F. Supp.

1351, 1360 (S.D. Tex. 1994) (holding that defendant's representation that a barge could be loaded in eighteen to twenty-four hours was not actionable under a theory of negligent misrepresentation); *City of Beaumont v. Excavators & Constructors, Inc.*, 870 S.W.2d 123, 138 (Tex. App.—Beaumont 1993, writ denied) (holding that statements as to how long a work project would take to complete were not "false information").

Plaintiffs' intentional misrepresentation claim also fails because Badame's statement that the Project would be completed in "a timely manner and efficient manner" is an opinion, and "[p]ure expressions of opinion are not representations of material fact, and thus cannot provide a basis for a fraud claim." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337-38 (Tex. 2011).

Even if Plaintiffs could demonstrate that Badame's statement was not an opinion, a fraudulent misrepresentation claim can be based on a promise of future performance only "if the promise was made with no intention of performing at the time it was made." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). The mere failure to perform a contract, however, is not evidence of fraud. *Id.* "A promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). Plaintiffs' allegation of fraud fails to allege that Badame made the statement knowing that it was false, and with no intention of completing the Project in a timely manner. Plaintiffs' intentional misrepresentation claim therefore fails.

Accordingly, Plaintiffs' tort-based claims related to Badame's attendance at the Meeting fail to state a plausible claim for relief and cannot give rise to jurisdiction in this case. *See Moncrief*, 481 F.3d at 314.

## 2. Badame's Post-Meeting Communications

Plaintiffs argue that Badame's emails to Plaintiffs after the Meeting in which he "made repeated false representations to Plaintiffs that the Project was a priority for Hunt and the Defendants and Badame would have his team develop a reliable and executable project schedule" provide additional support for the exercise of personal jurisdiction. Dkt. No. 51 at p. 8. Plaintiffs' claims regarding these communications fail for the same reasons detailed above regarding his statements in the Meeting. Plaintiffs do not allege that Badame made any false statement with the knowledge that it was false and with no intention of completing the Project in a timely manner. Sending a Texas resident a few emails related to a contract is not sufficient to establish the requisite minimum contacts to confer personal jurisdiction over Badame in this case. *See Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999) ("Its mere presence at the three meetings in Houston, together with the noted correspondence and phone calls, is not sufficient to establish the requisite minimum contacts because the record is devoid of evidence that Ruhrgas made false statements at the meetings or that the alleged tortious conduct was aimed at activities in Texas."). Based on the foregoing, the Court finds that it does not have personal jurisdiction over Badame in this case.

## C. Request for Jurisdictional Discovery

Plaintiffs argue that they should be permitted to seek discovery on the topics of Badame's contacts with Texas in order to provide support for the Court's exercise of personal jurisdiction over Badame. The Fifth Circuit, however, has held that jurisdictional discovery is appropriate only after a plaintiff has made "a preliminary showing of jurisdiction." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). Plaintiffs' pleadings are devoid of factual allegations that reasonably suggest that personal jurisdiction exists over Badame in this case. *See*

*First Inv. Corp. of Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 755 n.8 (5th Cir. 2012) (noting party must allege facts "that, if true, would establish jurisdiction" to be entitled to jurisdictional discovery); *Fairchild v. Barot*, 946 F. Supp.2d 573, 578 (N.D. Tex. 2013) (denying request for jurisdictional discovery where plaintiff failed to provide "colorable basis for jurisdiction") (internal citation omitted). Because Plaintiffs have not made "even a preliminary showing of jurisdiction" in this case, they are not entitled to jurisdictional discovery. Accordingly, Plaintiffs' Motion for Leave to Conduct Jurisdictional Discovery (Dkt. No. 51) is **DENIED**.

## V. Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** Defendant Tishman Construction Corporation's Motion to Dismiss for lack of subject matter jurisdiction (Dkt. No. 45). The undersigned **FURTHER RECOMMENDS** that the District Court **GRANT** Defendant Jay Badame's Motion to Dismiss for lack of personal jurisdiction (Dkt. No. 46). **IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to Conduct Jurisdictional Discovery (Dkt. No. 51) and Motion for Leave to File Surreply (Dkt. No. 62) are **DENIED**.

## VI. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party

from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on September 4, 2019.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE